The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with the modification of the Deputy Commissioners Finding of Fact #15 and other general modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a pretrial agreement dated 7 April 1999 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act. Furthermore, the Commission has jurisdiction over the parties and the subject matter and an employment relationship existed between decedent and defendant-employer.
2. Norman Hatcher, the deceased employee in this action ("decedent), had no whole or partial dependents at the time of his death. Marion Hatcher, the executor of Norman Hatchers estate, is the proper party-plaintiff. The beneficiaries under the estate are the children of Norman Hatcher: Marion Hatcher, Russell Hatcher, Helen Watson, Dorothy Collins, and Brenda Parker.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties. All claims against all defendants other than the named employer and carrier herein have been resolved pursuant to a compromise settlement agreement approved by the Industrial Commissions Executive Secretary on 7 November 1997.
4. The designated carrier in this action, Kemper, is properly on the risk for workers compensation purposes. Kemper only insured defendant-employer Daniel International Corporation at the Cape Fear DuPont location, although employees of Daniel International Corporation, including decedent, also worked at other locations. Employees of defendant-employer did not begin working at the Cape Fear DuPont location until 19 July 1971.
5. Decedent passed away on 25 April 1995 due to complications from lung cancer.
6. In addition to Dr. William F. Credles deposition transcript and the exhibit attached thereto, the parties stipulated into evidence a packet of records consisting of eleven individual tabs and a total of 448 pages. Furthermore, defendants exhibit one, an affidavit executed by decedent on 5 January 1995, is a part of the evidentiary record.
7. The primary issues to be determined are whether decedent contracted a compensable occupational disease or diseases by virtue of his employment with defendant-employer while it was insured by defendant-carrier, and if so, whether the occupational disease(s) resulted in, contributed to, or hastened decedents death.
 *********** EVIDENTIARY RULING
Plaintiffs offer of proof to the Deputy Commissioner regarding plaintiffs exhibits one through three, pictures of decedent, was Denied and accordingly, these exhibits are not a part of the evidentiary record in this matter. The Full Commission adopts the Deputy Commissioners evidentiary ruling.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission makes the following
 FINDINGS OF FACT
1. Decedent worked as a welder, millwright, and carpenter for forty-six years, from 1943 through 1989. Decedent worked for a number of different employers and at various jobsites throughout the country during his work history.
2. Decedent first worked for defendant-employer in 1948, and then again for various periods of time in the years 1960 through the late 1980s. According to the Social Security earnings records stipulated into evidence in this matter, decedent did not work for defendant-employer in 1968, or from October 1969 through March 1972. Decedent again became employed by defendant-employer in approximately April 1972. While decedent worked for defendant-employer, he was assigned to different jobsites including the Cape Fear DuPont site and was given different jobs to do, depending upon what work was required.
3. On several of the occasions decedent was employed by defendant-employer, he worked at the Cape Fear DuPont site. However, decedent also worked on the Cape Fear DuPont site at times when he was actually a DuPont employee. According to the Social Security earnings records stipulated into evidence in this matter, decedent was employed by and worked for DuPont in 1961 and again during the first half of 1968. Decedent next worked for DuPont from approximately July 1969 through approximately September 1970.
4. After defendant-employer began working at the Cape Fear DuPont site on 19 July 1971, decedent worked for defendant-employer at that site during three separate time periods. After July 1971, decedent only worked on the Cape Fear DuPont site as an employee of defendant-employer. Decedent worked at the Cape Fear DuPont site for defendant-employer from 25 September 1972 through 7 May 1973, from 14 May 1973 through 27 March 1975, and lastly, from 5 February 1976 through 10 March 1976. Decedent did not at any time work for defendant-employer at the Cape Fear DuPont site after 10 March 1976. Thereafter, decedent continued to work for defendant-employer until his retirement in 1978.
5. During the course of his employment history, decedent was exposed to asbestos on a number of occasions, beginning with his work at the Wilmington shipyard in the 1940s as an employee of North Carolina Shipbuilding Company. Decedent was a welder on the ships, and while working he was required to cover himself with an asbestos cloth as protection against sparks and fire. Over the years, decedent also came in contact with or worked around or near products made of asbestos such as insulation, particularly insulation for pipes. In fact, at times during the course of decedents work history, the asbestos particles would create a thick, visible cloud of dust that decedent was forced to inhale.
6. Decedent was exposed to asbestos when he worked as a millwright for defendant-employer at the Cape Fear DuPont site. While he worked on the Cape Fear DuPont site, there were visible dust particles of asbestos in the air a good deal of the time from the pipe insulation. In addition, at this site, asbestos blankets were placed around pumps, and decedent and other employees of defendant-employer had to handle and remove these blankets in order to get to the pumps.
7. After decedents retirement at age sixty-five in 1978, decedent collected Social Security benefits and continued to work at various jobsites for different employers in a limited capacity. Decedent worked and earned just enough salary so that he would remain entitled to receive the Social Security benefits. Decedent worked in this limited capacity through 1989, when he had to stop working because he had become increasingly short of breath.
8. After his retirement in 1978, one of the limited jobs performed by decedent involved working for defendant-employer at the Wilmington General Electric plant which was not insured by defendant-carrier. At this particular job, at which decedent worked in the late 1980s, decedent worked as a millwright on a shutdown, doing general mechanical maintenance work. At some point in 1988, defendant-employer left the General Electric plant site, and Mundy Industrial Contractors, Inc. took over in defendant-employers place. In 1988 decedent began working for Mundy at the General Electric plant and he worked at that site for that employer. Decedents last employment in any capacity was with Mundy at the General Electric plant in 1989.
9. While employed as a millwright for defendant-employer and then for Mundy at the General Electric plant through 1989, decedent was exposed to asbestos in the form of insulation. Decedent, in some instances, actually saw and consequently inhaled the asbestos dust while working for Mundy at the General Electric plant. Decedent did not wear protective clothing or a face mask during the periods of time that he was exposed to asbestos during his employment by Mundy at the General Electric plant.
10. Decedent began experiencing shortness of breath in the late 1970s or early 1980s. By 1990 decedent also had a chronic cough with sputum production. On 1 February 1990 decedent was examined by Dr. William F. Credle for an evaluation as to whether decedent had an asbestos-related disease or diseases. By 4 October 1990, Dr. Credle was able to positively diagnose asbestos-related lung disease consisting of pleural disease and pulmonary fibrosis, although he did not believe decedent was disabled at that time due to these conditions. In fact, Dr. Credle was of the opinion that decedents asbestosis was mild and of no real consequence.
11. In late November or early December 1994, Dr. Credle diagnosed decedent with small cell carcinoma after a mass appeared in decedents right lung. By December 1994, Dr. Credle indicated that due to the cancer and his advanced age, decedent was disabled from competitive employment.
12. On 25 April 1995, decedent died as a result of complications from the small cell carcinoma of his right lung.
13. Although at one time decedent had been a heavy smoker, he had not smoked for approximately thirty years when he was diagnosed with lung cancer. Decedents lung cancer, therefore, was likely caused by his exposure to asbestos in his various work environments. Decedents contraction of asbestosis was also likely caused by his exposure to asbestos in his various work environments. Moreover, decedents exposure to asbestos in the workplace placed him at an increased risk of contracting both asbestosis and lung cancer as compared to members of the general public not so employed.
14. According to the greater weight of the evidence of record, decedent was exposed to the hazards of asbestos for at least 30 working days within 7 consecutive calendar months while working for Mundy Industrial Contractors, Inc. after working for defendant-employer Daniel International. Therefore, decedent was consequently last injuriously exposed to asbestos in 1988-1989 when he worked for Mundy. Decedents estate has already settled its claim against Mundy.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Decedent contracted asbestosis and lung cancer as a result of his exposure to asbestos in the workplace. N.C.G.S. 97-62 and 53(13).
2. However, decedents last injurious exposure to asbestos did not occur while he was employed by the defendant-employer named herein. Accordingly, defendant-carrier in this matter cannot be held liable for any consequences arising out of decedents occupational disease or diseases. N.C.G.S. 97-57.
3. Plaintiff, therefore, is not entitled to workers compensation benefits from the named defendants as a result of decedents occupational diseases. N.C.G.S. 97-57.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiffs claim must be, and the same is Hereby Denied.
2. Each side shall bear its own costs of this proceeding.
This the ___ day of April 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENE C. RIGGSBEE COMMISSIONER